UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cr-20045-JES-JEH |
| ) | |
| EDMUNDO MANRIQUEZ-ALVARADO, ) | |
| ) | |
| Defendant. ) | |

# ORDER AND OPINION

Now before the Court is Defendant Edmundo Manriquez-Alvarado's Motion (Doc. 11) to Dismiss and the United States' Response (Doc. 14). For the reasons set forth below, Defendant's Motion (Doc. 11) is DENIED.

## BACKGROUND

On September 5, 2018, a grand jury returned an indictment charging Defendant Edmundo Manriquez-Alvarado, a Mexican citizen, with illegal reentry after prior deportation, in violation of Title 8, United States Code, Section 1326(a) and (b)(2). Doc. 1. The basis for the illegal reentry charge was Defendant's first deportation on March 3, 2008. The initial removal proceedings against Manriquez-Alvarado began on February 21, 2008, when immigration agents served Defendant with a Notice to Appear ("NTA") for removal proceedings under Section 240 of the Immigration and Nationality Act. The NTA directed Manriquez-Alvarado to appear before an immigration judge in Chicago "on a date to be set at a time to be set." *See* Doc. 12-1.

Defendant signed the certificate of service acknowledging receipt of the NTA and that he was provided oral notice in Spanish of the time and place of his hearing. He did not sign the section to request a prompt hearing. Defendant was then given the option of appearing before an

1

immigration judge or signing a stipulated request for order of removal and waiver of hearing. On February 25, 2008, Manriquez-Alvarado signed the stipulated request. In doing so, he also acknowledged that he received the NTA on February 21, 2008, that he was advised of his right to be represented by a lawyer during the immigration proceedings, and that he waived his right to be represented. By signing the stipulated request, Defendant requested that his removal proceedings be conducted completely on the written record without a hearing. He also waived his right to have 10 days to prepare for such a hearing, and that if a hearing was held, his presence be waived. Further, by signing the NTA, Defendant conceded the factual allegations of the NTA, affirmed that he was subject to removal, indicated that he had no fear of returning to his home country, and waived any right to apply for relief from removal. Defendant agreed to accept the written order as a final disposition of the immigration proceedings, waive his rights to appeal the removal order or to challenge it in any other proceedings, and to acknowledge that he entered into the agreement for his removal voluntarily, knowingly, and intelligently. *See* Docs. 12-1 to 12-4. The immigration judge entered the order of removal on February 29, 2008.

After his 2008 deportation, Defendant was ordered deported from the United States on four occasions: November 5, 2010; May 4, 2012; July 17, 2014; and August 24, 2017. Each of the subsequent removal orders reinstated the March 3, 2008 order.

In the instant Motion, Defendant argues that following the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), his Notice to Appear did not vest the immigration judge with subject matter jurisdiction. Therefore, he argues, his removal order is void, and the indictment must be dismissed because he cannot be convicted of illegal reentry. *See generally* Doc. 12.

## LEGAL STANDARD

An indictment is sufficient when it states all elements of the charged offense, informs the defendant of the nature of the charge such that he may prepare a defense, and enables the defendant to plead the judgment as a bar to a subsequent identical prosecution. *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). Courts examine the sufficiency of an indictment "on a practical basis and in its entirety, rather than in a hypertechnical manner." *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). Indictments may generally track the words of the statute itself, "so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Smith*, 230 F.3d at 305.

## DISCUSSION

Defendant's Motion is similar to others filed across the country in the wake of *Pereira*, so a brief discussion of that decision is in order. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Attorney General of the United States has discretion to cancel the removal and adjust the status of certain nonpermanent residents if the residents, *inter alia*, have been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of an application for cancellation of removal. *Pereira*, 138 S. Ct. at 2110; 8 U.S.C. § 1229b(b)(1)(A). The IIRIRA's time-stop rule provides that "any period of … continuous physical presence in the United States shall be deemed to end … when the alien is served a notice to appear under section 1229(a) of this title." *Id.*; § 1229b(d)(1)(A). Section 1229(a) provides that "written notice (in this section referred to as a 'notice to appear') shall be given … to the alien … specifying" 10 things, one of which is "[t]he time and place at which the proceedings will be held." *Id*.

In *Pereira*, the petitioner was admitted to the United States in 2000 as a nonpermanent resident. Pereira remained in the United States after the expiration of his visa. In 2006 he was arrested for a state offense, and while he was detained, DHS served him with a putative "Notice to Appear" that did not specify the date and time of the removal hearing. *Id*. at 2112. When the immigration court attempted to mail Pereira a more specific notice with a date and time for his hearing, it was returned as undeliverable. Pereira failed to appear and was ordered removed in absentia by the immigration court. In 2013, Pereira was again arrested for a state offense and was detained by DHS. After the immigration court reopened the proceedings based on the lack of notice, and Pereira subsequently applied for cancellation of removal, arguing that the 2006 putative Notice to Appear did not trigger the time-stop rule because it lacked information about the date and time of his hearing. *Id*. The Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2113–14.

Since *Pereira* was decided, numerous courts have had the opportunity to consider whether the Supreme Court's interpretation of "notice to appear" affects the subject matter jurisdiction of the immigration courts. *See, e.g., United States v. Monje-Garcia*, No. 18-cr-378-1, Doc. 25, at 3 (N.D. Ill. 2019) (collecting cases). In addition to the Board of Immigration Appeals, at least two circuit courts have found that *Pereira* does not apply outside the confines of the stop-time rule in cancellation of removal proceedings.[1] *See Matter of Bermudez-Cota*, 27 I. & N. Dec.

---

[1] Unlike the statutory definition of "Notice to Appear" addressed in *Pereira*, the definition of "Notice to Appear" at issue here is provided only by regulation. Thus, the BIA's interpretation is entitled to substantial deference by the Court. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Karingithi v. Whitaker*, 913 F.3d 1158, 1161 (9th Cir. 2019) ("*Pereira*'s definition of a "notice to appear *under section 1229(a)*" does not govern the meaning of "notice to appear" under an unrelated regulatory provision.") (emphasis original).

441, 447 (B.I.A. 2018); *Leonard v. Whitaker*, 746 F. App'x 269 (4th Cir. 2018); *United States v. Perez-Arellano*, No. 18-4301, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) ("Simply put, *Pereira* did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceeding."); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ.").

This Court agrees with the decisions of the courts of appeal that have addressed the issue and finds that the omission of date and time information on Manriquez-Alvarado's Notice to Appear did not divest the immigration court of jurisdiction over his removal proceedings. *Perez-Arellano*, No. 18-4301, 2018 WL 6617703, at *3; *Karingithi*, 913 F.3d at 1160. Moreover, Manriquez-Alvarado waived his challenge to the IJ's jurisdiction over the removal proceedings when he conceded his removability. *Qureshi v. Gonzales*, 442 F.3d 985, 990 (7th Cir. 2006) ("When a petitioner expressly concedes his removability as charged in the NTA, he waives any objection to the IJ's finding of removability, including the argument that the IJ lacked jurisdiction to find him removable. Because Qureshi failed to object to the admission of the NTA, conceded his removability, and pleaded to the charge in the NTA, all before claiming that the certificate of service was defective, he has waived his challenge to the IJ's jurisdiction over the removal proceedings.") (internal citations omitted). The Court has considered the remaining arguments in Defendant's Motion, but none have merit. Accordingly, the Motion to Dismiss is denied.

## CONCLUSION

For the reasons set forth above, Defendant Edmundo Manriquez-Alvarado's Motion (Doc. 11) to Dismiss is DENIED.

Signed on this 20th day of March, 2019.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge